All right, the next case we're going to hear today is Tati King v. Youngkin. And, Mr. Gallagher, whenever you're ready, we'll hear from you. I see it's just before noon, so I'll still say good morning, and may it please the Court. I'm Kevin Gallagher, Principal Deputy Solicitor General of the Commonwealth of Virginia, representing the appellants. With me today is Meredith Baker, Assistant Solicitor General. I reserve five minutes for rebuttal. This case involves plaintiffs using a novel claim brought under a unique statute to dramatically expand the Ex parte Young exception to sovereign immunity. That's improper for two main reasons. First, Ex parte Young is particularly unavailable for the Governor and the Secretary, because neither has proximity to and responsibility for the challenged state action, which is disenfranchisement. A state official must have proximity to and responsibility for the challenged state action. That's been in a line of cases from this Court, including Waste Management v. Gilmore, South Carolina v. Limehouse, and then McBurney in 2010. This requirement ensures that the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials. Doesn't get you real far, does it? I mean, you're going to knock out two parties, if you're right, and we still have the Ex parte Young issue, right? That's correct, Your Honor, although they're certainly not just two regular officials. They are the Governor and the Secretary of the Commonwealth. I understand, the Governor and Secretary of State. It's particularly important for these two officials. They have very important jobs. They're very busy people, and so sovereign immunity is an immunity from suit. I think I wrote an opinion that said the Governor is probably in South Carolina, doesn't have the, isn't exposed to Ex parte Young injunction for enforcement. That's right, Your Honor. In these particular circumstances, given what the plaintiffs are asking for here, we need to look at the particular officials that they're seeking to enjoin. Okay, so let's go to the people who do enforce the voting laws in Virginia. So your claim is basically that Ex parte Young requires either an individual federal right or an anti-suit injunction. What case says that? I actually, like, I mean, as a descriptive matter, I think you're correct that a lot, maybe most, maybe the vast majority of Ex, but, like, what case says it is limited to those two situations? Because, candidly, I am not aware of a case that says that. Your Honor, every case that is cited in both briefs. Right, that's a factual description of what is true in those cases. What case says it is limited to those two situations? Because I have not been able to find a case that says that. Yes, we would point you to the Michigan Correctional Organization. The Sixth Circuit case. Okay, so no authority of the Supreme Court or this Court has ever said that. Has not said it in such explicit terms. But if you look through every case that is cited in both briefs from this Court and from the Supreme Court, every single one of them fits into one of those two cases. Could you tell me about Antrocan and Dobson, then? Yes, absolutely. And I know you were on the panel. Both of you, Judge Gregory and Judge Hytens, were on the panel in Dobson. That case actually fits into both categories. There was a Section 19, there were three claims. The third claim was a Section 1983 claim for due process violation. So that fits very clearly into vindicating an individual right. Wait, so, wait, tell me that again. Just because they sued under 1983, ipso facto, it's an individual right? Why is it an individual right? 1983, they were suing under 1983 to vindicate their right to due process. Due process, okay. Yes, that's correct. So the underlying right is the due process right. Okay. That is the third claim. The other two claims are seeking to enjoin the enforcement of that North Carolina OSHA enforcement. There were penalties up to, I think, $112,000 worth of citations that were going to be issued against them. So that fits into the equitable anti-suit injunction category. Don't enforce these things against me. They're saying don't enforce these things against me. They are trying to assert inequity, a defense they would have had available to them in law, had they been enforced against them at law. So that case fits into both. In ANTRCAN, there is a federal, a recognized federal right to dental care that was at issue there. An individually enforceable federal right to dental care? They were seeking it through Section 1983. So in that case, the district... Did we ever ask whether that statute creates, you know, under the middle sex clamors, I think, factor? Like, did we ask those questions or did we just sort of assume they have an individual right to dental care? In that case, it was basically just assumed. It was not at issue on the appeal. So, again, it just fits into that category. If you look at the cases, they either fit into one bucket or the other or sometimes both, like in Dobson. So we can... I mean, I'm happy to go through each case that we cite in the brief, but this case would be something totally different. So let me flip side. What would happen if these plaintiffs tried to vote? There's going to be an election in Virginia in, you know, a month and a half. What if they showed up and tried to vote? What's going to happen? They would not be allowed to vote. Their voter registrations are not... And what if they somehow successfully succeeded in voting? What would happen then? Yes, I believe that is against the law. They'd be fined or prosecuted by someone? They... I will say, Your Honor, plaintiffs do not make the claim that they are seeking an equitable anti-suit injunction. There are several steps before that. They're not saying, we intend to vote, we're going to get prosecuted for it, you need to stop this. But it is currently illegal for them to vote in Virginia and they don't think it should be illegal for them to vote in Virginia, right? That's correct. But that is not... The equitable anti-suit injunction is a very specific remedy in equity that this does not fit into. Professor John Harrison, who I know you know, Judge, he has written extensively on the equitable versions of the anti-suit injunction. Ex parte Young is a great example of that. The plaintiffs there were seeking a defense they would have had available to them at law in equity to stop the enforcement of a future indictment under the Minnesota Railroad. Sure, they didn't want the AG to impose massive fines on them. That's exactly right. Here, plaintiffs don't allege that they're going down those roads. So the allegations are very... They're too far down the road. They have not alleged enough facts to show. And I would say, plaintiffs do not argue that they are in the equitable anti-suit injunction. If you look at their brief, they say, yes, some cases fall into one category, but not the other. Some cases fall into the second category, but not the first. They never say, we are seeking an individual right because under the district court's holding, there is no individual right under this statute. Well, I mean, in fairness to them, what they do is they quote Supreme Court decisions that list the requirements for ex parte Young that they claim they satisfy all of them. That is Verizon. They have a whole series of Supreme Court cases that say the requirements for ex parte Young are X, Y, and Z. We satisfy X, Y, and Z. Therefore, we're allowed to sue. That's what they do. That's right, Your Honor. But Verizon is a great example of that. In that case, this threshold inquiry of whether it fits into one category or the other was not an issue because there, there was a utility commission order that had already been issued, and the plaintiffs were suing for an anti-suit injunction to stop the enforcement of that order against them. So every case that they point to doesn't have to deal with this threshold inquiry because the threshold inquiry is met. This just doesn't really come up because this is a unique statute. We're talking about this Virginia Readmission Act of 1870. It is something that, as far as I'm aware, other than the Butler case from the EDVA in the 1950s, this is not something that people have tried to enforce. What difference does that make? I mean, what difference does it make this is something that people normally don't try to enforce when in 1870 it was very clear that that was the basis on which Virginia was admitted and allowed to have congressional representation? You know, what difference does it make that it's, you know, it's justice delayed perhaps? I mean, I see your point, but the question though is what they're saying. They fit in all those circumstances. That's what the district court found at this stage. It turns out the governor fits in that stage because the governor is the only person that can restore rights. And if, for example, if a remedy was given here and said, well, you can no longer do that, what happens to the people who are, because no one else can restore rights, even the other defendants who register people and do those things, they can't restore. So the people who would be stuck in the middle need someone to restore, be required to restore their rights. So that's assuming we're way down the road there. But at the end, if the plaintiffs prevail, someone has to say, Governor, you have to restore the rights of people. If you stop preventing registration, you may be able to register people, but only he can get them out of that quandary in terms of that nebulous area of applied for restoration, not given, and therefore they're prohibited. So it becomes a necessary part just in terms of implementing a remedy for those, that class of people, wouldn't it be? I don't think so, Your Honor, for this reason. Plaintiffs don't ask for this court to enjoin the governor to restore them the right to vote. They are complaining about the disenfranchisement at the front end, that when they became felons they were disenfranchised under Virginia law. So hypothetically, I realize that you don't think they're going to win this case, but hypothetically if they were to win this case and they got an injunction against the general registrars and all the election officials that says, you may not prevent me from voting, would you view that, like that alone would allow them to register and show up to vote without any involvement of the governor or the secretary of the commonwealth? That's right. I want to be very clear about this. There are two separate powers. There's the disenfranchisement power and there's the reenfranchisement power. Their theory is they were never validly disenfranchised in the first place. That's exactly right. The reenfranchisement power is particularly ill-suited for judicial review. That's what the Supreme Court said in Ohio, Parole Authority and the Connecticut Board of Pardons. So for this court to enjoin, this goes back to where I started, for this court to enjoin the governor and the secretary to have to reenfranchise these folks would be well beyond the judicial purview. I guess in this, if you think about a habeas case, right, we don't need to order the governor to pardon someone. We just need to order the warden to stop holding them. And you say, well, why am I stopping holding them? It's because we've declared a legal nullity, the conviction that was the basis of you holding them in the first place. You now no longer have a basis to hold them. That's right, Your Honor. If you look at their allegations and what they are seeking here, there's nothing particularly that the governor or the secretary do that's necessary here. They do not ask. They say the governor and the secretary, or the governor specifically, is mentioned in Article II, Section 1. He's mentioned for the reenfranchisement power. So when they say that they're trying to have enjoined defendants from enforcing Article II, Section 1, taken literally, that would mean that he can't reenfranchise anymore. That's not obviously what they're asking for. So what they must be asking for is for the governor to have to reenfranchise them. Can I ask you a couple of questions about the foreclosing equitable remedies? Sure. Step one, did you ever make that argument before the district court ever? That particular argument is here before this court because of the way the district court ruled. So that's a no? That is a no. That is correct, Your Honor. We didn't make that specific argument. What we did, and I'm going to explain to you how we got here, there are two separate claims under the Virginia Readmission Act that are in Plaintiff's Complaint. One is under Section 1983, and one is under Principles of Ex Parte Young. The Section 1983 claim, the district court ruled correctly that there's no individual rights, individual federal rights, under the Virginia Readmission Act, but allowed the federal equity claim to go forward, and ruled in the process of doing that, that Armstrong did not foreclose equitable relief. This court in Antrocan, the Supreme Court in Verizon, and Seminole Tribe have always looked at that as a jurisdictional question. So when that was the ruling that we got from the district court, and just because of the sort of odd circumstances that we got here, that's why we appealed under that. So let me ask you that. Let's assume, for the sake of argument, it's properly before us. So let's say, why is this like Antrocan? So as I understand your argument is that Congress could, if it discovered a violation of the Virginia Readmission Act, expel Virginia's representatives, which is a remedy. But why does that suggest that it's the only remedy, and how do you particularly square that with Antrocan? Because what you would say in Antrocan is, if the secretary discovers that you're not following Medicaid rules, I can withdraw your Medicaid funding. But in Antrocan, we said that is not enough to foreclose equitable remedies. That's right, but Antrocan obviously predates Armstrong, and I think you'd have to look at Antrocan in light of Armstrong. Armstrong dealt with a similar issue under the Medicaid Act about whether equitable relief was foreclosed. And the two factors that Armstrong looked at were whether the remedy was the sole one and the judicial unadministrability of that statute. Here, the remedy is Congress can kick out Virginia's delegation. Every court that has looked at this statute has held that. The Butler Court and the EDVA, the Arkansas Supreme Court, and eight justices on the Fifth Circuit have all looked at this statute and said Congress is the only enforcer of it. So the remedy that is in the statute is for Congress to remove Virginia's delegation. But what happens if a state enacts a law that clearly violates federal law, which didn't create any rights? Actually, this case. How do you enjoin the state from doing that? I mean, it seems to me, if it's a black-and-white situation and the state passes a statute that's contrary to federal law, a federal statute, Ex parte Young would suggest you don't have to go through the swoops and decide whether there's a remedy under the federal law or not. You have a state law that adversely affects me, and I want to enjoin that law. That's right, Your Honor. There would be two paths for you to go forward. One would be an anti-suit injunction. So like I was talking about with Judge Heitens, to say... I don't want to wait for a suit or a threat of a suit. I want to enjoin it. I want to vote. So if you had an individual federal right, we agree that a threshold inquiry would not be relevant here. They don't have a federal right. What we have is a state statute that violates federal law. Right. So in that situation where all we have is a... And the state statute is denying me of a right, of a fundamental right to vote. So if it was a fundamental right to vote, you could make some sort of 14th Amendment, 15th Amendment argument that would then fall into that first category that we talked about where you're trying to vindicate a federal right. If it is just an argument where there's a state statute that violates a federal statute, no individual right, not seeking an anti-suit injunction, at that point, I would point you to Armstrong. Congress has the ability to allow vindication of federal law with federal actors. And at that point, because of not fitting into the threshold inquiry and then also Congress limiting equitable relief based off of the two factors that we just talked about, it would be in those sort of unique situations that there would be not a way to vindicate it as a private party. I understand that you have ways of distinguishing it, said it wasn't properly presented, point out that parts of the opinion are actually good for you. Is there any way for us to write an opinion agreeing with you on this without necessarily saying that part of the Fifth Circuit's analysis is wrong? Is there any way to do that? Yes, Your Honor. What, they didn't consider this argument? But no, other than they didn't consider this argument, that they reached the bottom line wrong answer on that question. So, I see my time has expired. May I answer the question? I think a couple of things. First of all, the governor and the secretary very easily... Sure, they're different, I get it. For the actual question about here, I think it's a Pennhurst question where there are two different provisions of the Re-Admission Act where this one has to do with the right to vote, the other one has to do with school rights and privileges. There are differences between those provisions that could create daylight. Could theoretically create a different result. Could create a different result. I also think that it is very relevant that the Fifth Circuit there did not consider the threshold question that we've been talking about as well as any congressional limitations on equitable relief. Unless there are any further questions, I'll save my time for a moment. Thank you. Thank you. All right. Over here, please. Ms. Ahmadi. May it please the Court, my name is Brittany Ahmadi and I represent Appellees Tati Abu-King and Tony Heath-Johnson. The scope of this appeal is limited to a single issue under the Collateral Order Doctrine and that is whether the District Court properly determined that the ex parte young exception to sovereign immunity applies here. That question under Dobson requires only a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. And both are true here. The complaint, for example, in paragraphs 108 and 110 alleges that appellant's ongoing enforcement of Article 2, Section 1 of the Virginia Constitution violates the Virginia Readmission Act, a federal statute. And the complaint seeks prospective injunctive relief against ongoing unlawful enforcement of Article 2, Section 1. How is the Governor engaged in any ongoing unlawful enforcement? Two responses to that, Your Honor. With respect to the Governor and the Secretary, there's no dispute that the Governor is explicitly named in the very provision that is at issue. I don't see why that matters even a little bit. And here, the Governor is responsible for ongoing... How? He's not preventing anyone from voting, he's just not restoring people's rights, which admittedly he could do, but how is that enforcing the ongoing violation? The Governor and the Secretary acting on the Governor's behalf have unilateral discretion as to whether to re-enfranchise individuals Let me give you that hypo that I gave your friend on the other side about a habeas situation. That's like saying, because the President can pardon anyone whose conviction violates federal law, the President is enforcing their illegal sentence in every 2255 proceeding. But no one thinks that's true, because what the Court does if it grants post-conviction or habeas relief is it just orders the Court not to hold the person anymore, it orders the Warden to free them, but we don't bring the Governor into habeas cases. Even though he could pardon people, even though he absolutely could, he could fix this whole problem. Any person who's wrongfully detained in habeas, the Governor could just fix this problem by pardoning them, but we don't say that means the Governor is enforcing the underlying criminal conviction. I think this case is distinguishable from those cases and cases like the Doyle case, because the Governor... Could you just speak up a little bit? Sure. We're all across the room here. Yes, Your Honor. Sorry about that. I apologize. I think this case is distinguishable from cases such as your example, Your Honor, as well as the Doyle case, because the Governor has unique authority to re-enfranchise individuals who apply to have their rights restored. The Governor has unique authority to pardon people convicted of crimes. That doesn't get you anywhere. But I think here, where you have a... You're not asking for him to exercise discretion to restore this man's rights. You're attacking the Virginia provision, aren't you? We have sought broad injunctive relief... That's an insurmountable problem for you to have a mandatory injunction telling the Governor he has to exercise a discretionary act of restoring rights. I don't know why you want to even take that upon yourself. Well, I think, Your Honor, the Governor and the Secretary are included in this case because we want to ensure that the plaintiffs in this case and other individuals similarly situated can receive full relief here. And I have not heard a representation from the other side that they will be able to obtain that full relief. But how could they? Because you simply obtained an injunction against the local registers of elections and against the Department of Elections and says to the extent Virginia law would otherwise require you to strike this person's name from the rolls, don't strike this person's name from the rolls, to the extent that Virginia law would otherwise, when this person shows up to register, require you to say no, don't follow Virginia law. So leave them on the rolls and let them register and when they try to vote, let them vote. How is that not complete relief? Your Honor, we would submit that we believe that relief is possible. So why do I need the Governor and the Secretary of the Commonwealth? Well, Your Honor, the Government has taken the position, including in its blue brief at pages 2 and 5 through 6, that the disenfranchisement is, quote, automatic. And so we want to ensure that the plaintiffs in this case can obtain complete relief without the Governor and the Secretary in the case. Right, but I just hypothesized an injunction that it seems to me would give you complete relief without the Governor and without the Secretary. It doesn't even give you complete relief. I mean, restoration requires the Governor to consider it under I don't know what circumstances, but it gives him authority to restore rights. But your gripe is that the Constitution of Virginia violates the federal law, right? That's correct, Your Honor. And to the extent that the other defendants in the case will concede that complete relief can be determined from those individuals in the case without the Governor and the Secretary, plaintiffs would be happy to proceed in that fashion. However, our concern is that they have taken the position that the disenfranchisement is automatic and suggested that maybe they don't believe that having those individuals in the case can lead to complete relief here. Can I ask you a different question just about conceptually? So in part, this is asking you to respond to something the state says. Their argument is that you're really seeking to enforce the Constitution of 1868. You know what I'm talking about. They assert that what you're really seeking to enforce is not federal law but an earlier Virginia Constitution. And so do you concede that if tomorrow Congress repealed the Virginia Admission Act, just straight up clean repeal, right, a bill to repeal the Virginia Admission Act, if Congress did that tomorrow, this case would have to be dismissed, right? If Congress repealed the statute that we are suing... The Virginia Readmission Act, the very statute that you claim they're currently violating. If Congress repealed that statute tomorrow, this case ends, correct? I believe that. Because there would be no basis for prospective relief based on the statute, and because of sovereign immunity, you couldn't get retrospective relief for what you claim was like 100 years of violation of that statute. But none of that matters because you can't get damages relief. I think that would be correct, Your Honor. But to your question about the 1869 Constitution, just to be clear, we are not alleging that the 1869 Constitution should remain in place or seeking compliance with that provision. If I could address just briefly, Your Honor, with respect to the arguments related to individual rights, there is not a federal case that we are aware of, and I don't believe other than the Michigan case from the Sixth Circuit that my friends on the other side have pointed to any, that render that a requirement for asserting a federal equity cause of action as we have asserted here. And the Supreme Court and in the Armstrong case and in Clarence have made clear... Let me ask you this about that. They don't articulate it because it's a strange point to make. It seems to me if a plaintiff comes in and seeks simply to enjoin something that violates federal law and that person has no rights, it's almost a standing issue type of thing. Here, there's a fundamental underlying right to vote, isn't it? And the right to vote was guaranteed by the federal act and has been infringed by the Virginia Constitution. That's your point, isn't it? We agree, Your Honor, yes. And, I mean, this is not... This is a right that he's trying to vindicate. It's the right to vote, isn't it? I don't know where you're going to place that right, but I guess in the 14th Amendment, I guess. We agree that there is rights-creating language within the Readmission Act. It explicitly references the rights of citizens or classes of citizens and the right to vote. The district court dismissed our 1983 cause of action and that issue is not... We were not able to bring that as an appellate issue here, but we certainly maintain our position that the Virginia Readmission Act itself has rights-creating language. And if I could just say a couple of words on the Williams case... The federal act itself assures the right to vote, doesn't it? Yes, Your Honor. As a condition. Correct. Or a condition of the Virginia. Correct, a fundamental condition of readmission. And it explicitly references the right to vote in the Readmission Act. And with respect to the argument related to the anti-suit injunction, that is not the standard under Dobson and under the Supreme Court's precedent. The standard is whether prospective relief has been sought and that's certainly true here. And for example, in the Antrokin case, the relief that was being sought was to bring the North Carolina Medicaid program into compliance with the Medicaid Act and not to prohibit an enforcement action against the plaintiffs in that case. And the same is true here. We're seeking to bring the state law into compliance with the federal statute in the Virginia Readmission Act. And the last point I'd just like to address that was raised by the other side here is the intent to foreclose equitable relief. We don't believe that that's properly before this court under Dobson. I would have been inclined to agree with you, but how do you possibly square that with the fact that Antrokin and Seminole Tribe both considered that in an appeal from the denial of a motion to dismiss under Ex Parte? Like they both, both of those cases, considered this intent to foreclose issue in the context of an interlocutory appeal about sovereign immunity, didn't they? They did, Your Honor. So how do I square your argument that it's not properly before us with the fact that the Supreme Court and this court have both done precisely the thing you say we're not supposed to do? I think both in the Antrokin case and specifically in the Antrokin case, I don't believe this argument was raised. And I think Dobson makes clear that the inquiry as to whether Ex Parte Young exception applies is a straightforward inquiry that requires those two promises. Okay, but what about Seminole Tribe, where the court literally calls this jurisdictional? Your Honor, I think looking at the collateral order doctrine... No, but the Supreme Court of the United States literally calls this jurisdictional in the Seminole Tribe. What do I do with that? How do I explain, notwithstanding the fact that they've done it, we've done it, and they've called it jurisdictional, I still can't do it? Your Honor, it may be jurisdictional, but it's not this specific sovereign immunity question. There are other jurisdictional issues, such as standing that this court has held are not to be addressed under the collateral order doctrine in a interlocutory appeal of right, which is a fairly extreme remedy here. But even if this court were to address the intent to foreclose equitable relief here, we believe that there is no intent to foreclose equitable relief in the Virginia Re-Admission Act for two reasons. First, the Re-Admission Act does not contain any enforcement remedies for its violation. In fact, the appellants have pointed to the fact that Congress could expel Virginia's representatives from Congress, but the act itself doesn't lay out any procedures for such expulsion or define that as a particular remedy that is available. And as we explained in our brief, in the red brief at 52 to 53. Well, I mean, by re-admitting Virginia, the federal government let Virginia have its representatives back, so I guess the argument is, the obvious implication is, and if you violate this, you don't get the thing that this act otherwise gives you, right? Because the act itself is what gives Virginia its representation back. That's correct. For re-admission into Congress and representation, however, I think this case is distinguishable from, for example, Armstrong and from Seminole Tribe, where you had an explicit remedy that was laid out in the statute and that led the court to conclude that that was the only remedy that was available. There's no such explicit remedy laid out in the Virginia Re-Admission Act here, and so we don't believe that it falls within the intent to foreclose equitable relief. And for the second reason, that this is not a case involving judicially unadministerable standards, as you had, for example, in the Armstrong case, where there was language that was particularly committed to the expertise of the agency. Here, we're talking about statutory interpretation. Just look at things that were felonies in 1868, and then we're basically done? That's correct, Your Honor, yes. So we don't believe there's any intent to foreclose equitable relief here. Unless the court has further questions. All right, thank you very much. Thank you, Your Honor. You probably saw this coming. So why doesn't the fact that she's conceded that the minute Congress repeals the Virginia Re-Admission Act, this entire lawsuit goes away, doesn't that demonstrate that this is seeking prospective injunctive relief for violation of federal law, not seeking to reinforce the 1868 Constitution of Virginia? To answer your question, Judge Heitens, and I will, I want to answer it in light of what Judge Niemeyer was also asking.  So we have to look at what the Virginia Re-Admission Act does. The Virginia Re-Admission Act does not itself protect the rights. It does not create the rights. I think you heard from my friend on the other side that there is rights-creating language in the Virginia Re-Admission Act. That is not the case. If you look at the text of the Virginia Re-Admission Act, it says that Virginia cannot amend or change its Constitution to remove the right to vote from a citizen or class of citizens that is entitled to vote by the Constitution herein recognized. That's just federal law incorporating state law standards. We do that all the time. Your Honor, I don't believe that that is incorporating the state law standard. I think that this is closer to the Bragg situation this Court dealt with in 2001. There are minimum federal standards that are being laid out here, which is you can't amend or change your Constitution in these ways. But what is actually being enforced, if there were to be an injunction issued, it would be saying that these people have the right to vote. Where does the right to vote come from in this case? It is from the 1869 Constitution. No, but if we repeal the Virginia Admission Act tomorrow, it's gone, so that suggests that the right comes from the Virginia Re-Admission Act. I don't think that's right, Your Honor. Well, let me rephrase. Absent the Virginia Re-Admission Act, Virginia can change its Constitution in any old way it wants, as long as it doesn't violate the federal Constitution, right? Absent the Re-Admission Act, and again, absent a 14th or 15th Amendment argument that we'll just posit away for the sake of argument, but absent federal constitutional constraints, absent a federal statute, states can change their Constitution any time they want to in any way they want to. But in this particular instance, I think what plaintiffs want the Virginia Re-Admission Act to say is that Virginia can't amend its Constitution to do this. What it says is it can't amend its Constitution to remove the right to vote for people who have been recognized to have the right to vote under this Constitution in the future. So what I'm saying is it is not just federal law telling the state what it can do in its Constitution. It is state Constitution to state Constitution. Think about what we'd have to do if this got back to the District Court. The District Court would have to look at the 1869 Constitution, say what rights were protected, what classes of citizens were allowed to vote in 1869. And then in 1971, is there a match there or is there a disconnect? And then only at that point would there be a violation of the federal law. So the right that is being protected... But that's because federal law says that's what the District Court is supposed to do, right? If there was an amendment or change that changed the right that was recognized in 1869. I understand this is a very unique statute. And our only point is that in this particular unique context, what they are seeking to do is not enforce the federal law. It is trying to vindicate the right to vote that is under the 1869 Constitution. I also want to make a point about... You've heard several times from my friend on the other side that it's a straightforward inquiry into the factors of whether there's ongoing federal violation and prospective relief sought. Verizon says that in the very next paragraph it goes into the jurisdictional question about whether Congress has foreclosed equitable relief. If that is all that there is to an Ex Parte Young claim, there would never have been that second paragraph in Verizon. This Court would never look at whether the defendant in waste management and McBurney, it would never look at whether the defendant is the properly named defendant. It is not just those two factors that are relevant. There's the threshold inquiry about whether it fits into one of the two categories. It's a look at whether Congress has foreclosed equitable relief and that you also have to see if the defendant is the proper defendant. And finally, I want to mention ANTRACAN. ANTRACAN, my friend on the other side, said it's not an equitable anti-suit injunction. We've never made that argument. If you look at our brief, I believe it's page 22, we put that in the category of individual right. I think Judge Heitens, you and I were talking about that. But there is a, in that particular case, there's a section 1983 cause of action for individual federal right to dental care. It is not an equitable anti-suit injunction. It is the individual federal right. Unless there are any further questions, we would ask this Court to reverse the District Court with instructions. One question, you said that it was not Congress' intent here to give equitable relief. Did you say that? In this act, the VRA? We believe that Congress, based on the Armstrong factors, has limited equitable relief in this case. That the remedy here is for Congress to remove Virginia's delegation if it chooses to do so. And you think that's the sole remedy? Yes, we do, Your Honor. But you have no case law for that? Butler, from EDVA in 1950, the Arkansas Supreme Court case, Merritt, and then eight judges of the Fifth Circuit have looked at this, have looked at different Re-Admission Act statutes. The Virginia one is Virginia's, but the other two are different ones and have come to the conclusion that Congress is the enforcer,  But you have to look at what Congress' intent was with this statute, don't you? We look at the statutory text to determine the intent. That's right. Yeah, what was the intent then? The intent was to, as a matter of fact, Virginia was the first state, I think, that was removed from a federal district, military district. It was District 1 and part of it, one of the first ones, Mississippi, I think, may have been the last one. I mean, there was a strong force here because they knew what they were going to do to the newly freed persons. They didn't trust Virginia to do anything. They said, look, you can't do anything other. That's why they said now. Felonies, the common law felonies that exist now. And you're saying that the only remedy, the intent was that once you have Congress people here, we have to take them out of Congress? That would be just incredible. You couldn't do that. I mean, that would be just, you said the only remedy was, okay, you represent Virginia in Congress in the Senate. We're going to force you out of the Capitol. That's what you're saying is the only remedy was meant? That's right, Your Honor. We have to look at the nature of what the Virginia Re-Admission Act is. It is a contract, essentially, between Congress and Virginia. If you want to have a congressional delegation in Congress, you need to do these things. It's not a contract in that sense. It's a contract to make our country equal before the Civil War to try to heal our nation's wounds. And this was a way to say that this is a demonstrable way to show that everybody should be treated equal, potentially, franchisement. It was not just some widgets. You know, it's not about widgets. It's about people and about rights. And so to say that, oh, we can't do anything about it because the whole world has to turn upside down in order to give a remedy, I don't think so. Just do the right thing. And that's why they're here in terms of court. And at this point, do we know what the governor's role is, really? Do we have facts, depositions, and how that works? And how does he filter them out? Does he, for example, well, if it's not a common law, there's this, maybe I'll give it to you, maybe that. We don't know that, do we? There actually is factual development in the record on this exact point, Your Honor. Deposition? Not deposition, Your Honor. That's the best way to do it for the only person that can restore rights. Understood. Two answers to that, Your Honor. First of all, plaintiffs did not put anything in the record on this point, whereas defendants put in the affidavit from the Secretary of the Commonwealth as well as the Commissioner of Elections. And the whole point about the governor and the secretary being the proper defendants here goes to what relief would be ordered. Plaintiffs don't, I believe you heard from the other side, they don't ask for an order ordering the governor to re-enfranchise anybody. So the governor is just not involved in the disenfranchisement that's at issue here.  the district court said it was, so the appellate court, we should, the three of us should decide whether the district court was wrong in doing so? That's correct, Your Honor. On facts, on facts, or the case, solely because of the case you cite, right? For this particular point, we've cited several cases from this court about who is the proper defendant in an ex parte young suit, McBurney, Gilmore, and Limehouse. All those cases point toward that. And then, I would just reiterate that the factual record is completely all of our information. It was an affidavit from the Secretary of the Commonwealth as well as the Commissioner of Election. The plaintiff put on no evidence about this question. You do know Virginia has one of the most powerful governors in the country in terms of rights, in terms of privileges, in terms of appointments. It's my, you know, it's unique from state to state. Virginia, I think, governor has broader powers than many other states. It is unique. Go ahead. No, go ahead. All I was going to say is in the record, in the affidavit that we put in from the Secretary, it goes through that the governor has a reenfranchisement process in place. He's reenfranchised thousands of felons over the course of his two and a half years in office. So he's taking this duty in the Virginia Constitution very seriously, Your Honor. Unless there are any further questions, we would ask the Court to reverse. Thank you. Thank you. We'll come down and the great counsel will have to adjourn the Court until tomorrow. This Honorable Court stands adjourned until tomorrow morning. God save the United States and this Honorable Court.
judges: Paul V. Niemeyer, Roger L. Gregory, Toby J. Heytens